Hannah Stone, Esq.
Alyssa L. Probst, Esq.
Milodragovich, Dale, & Steinbrenner, P.C.
620 High Park Way
Missoula, Montana 59806
Tel.:  (406) 728-1455
Fax:  (406) 549-7077
Email:  hstone@bigskylawyers.com
        aprobst@bigskylawyers.com
*Attorneys for Proposed  Defendant-Intervenors*
*Safari Club International, National Rifle Association*
*of America, Sportsmen's Alliance Foundation and*
*Rocky Mountain Elk Foundation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> U.S. FISH AND WILDLIFE SERVICE, <br><br> Defendants, <br><br> and <br><br> SAFARI CLUB INTERNATIONAL, the NATIONAL RIFLE ASSOCIATION OF AMERICA, SPORTSMEN'S ALLIANCE FOUNDATION, and the ROCKY MOUNTAIN ELK FOUNDATION, <br><br> Proposed Defendant-Intervenors. | Case No. 9:21-cv-00144-DWM <br><br> **BRIEF IN SUPPORT OF MOTION TO INTERVENE BY SAFARI CLUB INTERNATIONAL, THE NATIONAL RIFLE ASSOCIATION OF AMERICA, SPORTSMEN'S ALLIANCE FOUNDATION, AND THE ROCKY MOUNTAIN ELK FOUNDATION** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 2

ARGUMENT ..................................................................................... 8

I.   THE HUNTING COALITION SHOULD BE GRANTED
INTERVENTION AS OF RIGHT........................................................ 8

    A. The Motion is timely. ........................................................... 9

    B. The Hunting Coalition has significant protectable interests in the
subject matter of this litigation. ......................................... 11

    C. Disposition of this case will impair the Hunting Coalition's ability to
protect their interests............................................................ 13

    D. Federal Defendants do not adequately represent the Hunting
Coalition's interests. ............................................................ 15

II.  ALTERNATIVELY, THE HUNTING COALITION SHOULD BE
GRANTED PERMISSIVE INTERVENTION. ..................................... 23

III.  AS A FINAL ALTERNATIVE, THE HUNTING COALITION SHOULD
BE GRANTED AMICI CURIAE STATUS............................................ 26

CONCLUSION ................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Kimbell*, No. 06-cv-63,
  2006 WL 8430428 (D. Mont. Aug. 7, 2006) ................................................. 24, 26

*Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 261 (D. Ariz. 2020) ................. 9

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) ...................... 24

*California ex rel. Lockyer v. United States,* 450 F.3d 436 (9th Cir. 2006) ............. 14

*California v. U.S. EPA*, No. 18-cv-3237,
  2018 WL 6069943 (N.D. Cal. Nov. 20, 2018) .............................................. 24, 26

*Californians for Safe & Competitive Dump Truck Transp.
  v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998) ......................................... 18

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ................................................. 9, 14, 19, 21

*Cnty. of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) ........................................ 11

*Crow Indian Tribe v. United States*, No. 17-cv-89,
  2017 WL 6327775 (D. Mont. Dec. 11, 2017) ........................................................ 25

*Ctr. for Biological Diversity v. Haaland*, No. 20-cv-461,
  Dkt. 23 (D. Ariz. June 16, 2021) ........................................................ 17

*Ctr. for Biological Diversity v. Zinke*, 313 F. Supp. 3d 976 (D. Alaska 2018) ........ 6

*Defs. of Wildlife v. Service*, No. 21-cv-344, Dkt. 39 (N.D. Cal. May 6, 2021). ..... 17

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995),
  *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ........................................................ 18

*Fund for Animals v. Hall*, 777 F. Supp. 2d 92 (D.D.C. 2011) ................................... 7

*Helena Hunters & Anglers Ass'n v. Martin*,
  No. 19-cv-47, 2019 WL 4043948 (D. Mont. Aug. 27, 2019)...............................24

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002),
  *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ...................................................................24

*Miller-Wohl Co. v. Comm'r of Labor & Indus.*, 694 F.2d 203 (9th Cir. 1982)......26

*Mont. Wildlife Fed'n v. Haaland*, No. 20-35793,
  2022 WL 42794 (9th Cir. Jan. 5, 2022) .................................................23

*NRDC v. McCarthy*, No. 16-cv-2184, 2016 WL 6520170
  (N.D. Cal. Nov. 3, 2016)............................................................................10

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967)........................................11

*Oakley v. Devos*, No. 20-cv-3215, 2020 WL 3268661
  (N.D. Cal. June 17, 2020) .......................................................................26

*Perry v. Schwarzenegger*, 630 F.3d 898 (9th Cir. 2011) ........................24

*Pub. Emps. for Envtl. Resp. v. Bernhardt*, No. 18-cv-1547,
  2020 WL 601783 (D.D.C. Feb. 7, 2020) ...............................................17

*Pub. Emps. for Envtl. Resp. v. Bernhardt*, No. 18-cv-1547,
  Dkt. 22 (Mar. 22, 2019) ..........................................................................26

*Rock Creek All. v. Service*, No. 08-cv-28, 2008 WL 11350203
  (D. Mont. Apr. 4, 2008) ...........................................................................10

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
  No. 06-cv-2845, 2007 WL 3034887 (E.D. Cal. Oct. 16, 2007) ...........21

*Sierra Club v. U.S. EPA*, 995 F.2d 1478 (9th Cir. 1993),
  *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) .................................................................11

*Sw. Ctr. for Bio. Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ..........8, 13, 16, 21

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972)..............16

iii

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ................. 11, 13

*United States v. Oregon*, 745 F.2d 550 (9th Cir. 1984) ......................................... 10

*W. Watersheds Project v. Haaland*, 22 F.4th 828 (9th Cir. 2022) .............. 15, 17, 21

*W. Watersheds Project v. Service*, No. 10-cv-229,
2011 WL 2690430 (D. Idaho July 9, 2011) ......................................................... 20

*Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183 (9th Cir. 2009)....................... 9

**Statutes**

16 U.S.C. § 1536(a)(2) ................................................................................................ 8

16 U.S.C. § 668dd ....................................................................................................... 2

16 U.S.C. § 668dd(a)(3)(C)......................................................................................... 2

16 U.S.C. § 668ee(2) ................................................................................................... 2

42 U.S.C. §§ 4321 *et seq.* ........................................................................................... 8

**Other Authorities**

143 Cong. Rec. H3225-01 (June 3, 1997)................................................................... 3

143 Cong. Rec. H7646-02 (Sept. 23, 1997) ............................................................... 3

**Rules**

Fed. R. Civ. P. 24 .................................................................................................. 1, 25

Fed. R. Civ. P. 24(a) ......................................................................................... 8, 11, 23

Fed. R. Civ. P. 24(b).................................................................................................. 23

Fed. R. Civ. P. 24(c).................................................................................................... 9

**Regulations**

85 Fed. Reg. 20,030 (Apr. 9, 2020)............................................................22

85 Fed. Reg. 54,076 (Aug. 31, 2020)..............................................*passim*

## INDEX OF EXHIBITS

Michael Bancroft Declaration ................................................................ Ex. 1

Robert Leon Edwards Declaration ........................................................ Ex. 2

Rew R. Goodenow Declaration .............................................................. Ex. 3

Kjell Hedström Declaration .................................................................... Ex. 4

Adam Hernandez, Jr. Declaration ......................................................... Ex. 5

Evan Heusinkveld Declaration ............................................................... Ex. 6

Gary Maas Declaration ........................................................................... Ex. 7

Dennis D. Mann Declaration .................................................................. Ex. 8

Jared Michael Moon Declaration .......................................................... Ex. 9

Randolph Michael Rabbe Declaration ................................................ Ex. 10

Michael J. Rusing Declaration ............................................................. Ex. 11

Victor J. Sages Declaration .................................................................. Ex. 12

Joshua R. Savani Declaration .............................................................. Ex. 13

Phillip M. Walters Declaration ............................................................ Ex. 14

R. Kyle Weaver Declaration ................................................................ Ex. 15

**BRIEF IN SUPPORT OF MOTION TO INTERVENE BY SAFARI CLUB INTERNATIONAL, THE NATIONAL RIFLE ASSOCIATION OF AMERICA, SPORTSMEN'S ALLIANCE FOUNDATION, AND THE ROCKY MOUNTAIN ELK FOUNDATION**

## INTRODUCTION

Safari Club International ("Safari Club"), the National Rifle Association of America ("NRA"), Sportsmen's Alliance Foundation ("Sportsmen's Alliance"), and the Rocky Mountain Elk Foundation ("RMEF") (together, the "Hunting Coalition") seek to jointly intervene in this case to defend the U.S. Fish and Wildlife Service's ("Service") 2020 rule opening eight National Wildlife Refuges ("Refuges") to hunting and sport fishing for the first time, expanding hunting and sport fishing access at 89 Refuges, and opening hunting at nine National Fish Hatcheries across the United States.  85 Fed. Reg. 54,076 (Aug. 31, 2020) ("2020 Hunt Fish Rule").  The Hunting Coalition moves to participate as a party to represent each organization's interests and the interests of their respective members, who will hunt and fish on Refuges.  The Hunting Coalition should be granted intervention as of right because it satisfies all elements of Rule 24(a) of the Federal Rules of Civil Procedure: (1) this Motion is timely; (2) the Hunting Coalition and their members have significant protectable interests in the subject of this case; (3) these interests will be harmed if Plaintiff Center for Biological Diversity ("Center") prevails; and (4) the existing parties do not adequately represent the Coalition's interests.

1

Alternatively, the Hunting Coalition requests that the Court grant it permission to intervene because its defenses and the main case have questions of law and fact in common.  Finally, should the Court deny permission to intervene, the Hunting Coalition respectfully seeks leave to participate as amicus curiae in support of Defendants Service et al. ("Federal Defendants").

## BACKGROUND

The National Wildlife Refuge System ("Refuge System") includes 568 Refuges—at least one in each state—and over 150 million acres of land for conservation and recreational use.[1]  The Service administers the Refuge System and implements the National Wildlife Refuge System Improvement Act of 1997 ("Improvement Act").  16 U.S.C. § 668dd.  Each Refuge is established to protect wildlife and habitat, and many are dedicated to providing recreational uses such as hunting and fishing—including Refuges at issue in this case.[2]  In fact, the Improvement Act establishes hunting, fishing, and four other "wildlife-dependent recreational uses" as priority uses of Refuges.  16 U.S.C. § 668dd(a)(3)(C); § 668ee(2).

---

[1] Service, National Wildlife Refuge System, Frequently Asked Questions, https://www.fws.gov/refuges/about/faq.html.

[2] Service, Comprehensive Conservation Plan ("CCP"): Lacreek Refuge (2006), https://www.fws.gov/uploadedFiles/Region_6/NWRS/Dakota_Zone/Lacreek_Complex/Lacreek/lck_2006_ccpfinal_all.pdf.

Significant funding for the acquisition and maintenance of these Refuges comes from hunting and fishing. *E.g.*, 143 Cong. Rec. H3225-01 (June 3, 1997) (discussion of Improvement Act, statement of Rep. Dingell) (noting "it was the hunters who set up and who maintained and who preserved, protected, and funded the wildlife refuge system, and it is the hunter with his small contribution of one duck stamp each hunting season that makes possible the continued acquisition of land for the precious purpose of protecting this system"). Congress has recognized that "hunters and anglers are the unquestioned leaders when it comes to wildlife and fisheries restoration and conservation. America's hunters and anglers have contributed well over $6 billion to wildlife and fisheries restoration over the past 60 years ...." 143 Cong. Rec. H7646-02 (Sept. 23, 1997) (discussion of Improvement Act, statement of Rep. Tanner). For instance, in 2021, the Service distributed over $1.5 billion in funds generated from the sale of hunting and fishing equipment pursuant to the Pittman-Robertson Federal Aid in Wildlife Restoration Act and Dingell-Johnson/Wallop-Breaux Federal Aid in Sport Fish Restoration

Act.[3]  These monies make up most of the state wildlife authorities' operating

budgets.[4]

In addition, hunting can provide direct management benefits on Refuges,

particularly to control big game or invasive species that otherwise negatively

impact habitat.  For example, hunting is widely used to control deer populations

and reduce over-browsing.[5]  Hunting is also a primary method of controlling

---

[3] Press Release, U.S. Department of the Interior ("DOI") (Feb. 11, 2022),
https://www.doi.gov/pressreleases/interior-department-announces-over-15-billion-support-state-wildlife-conservation-and.

[4] *E.g.*, Press Release, DOI (Mar. 19, 2020),
https://www.doi.gov/pressreleases/sportsmen-and-sportswomen-generate-nearly-1-billion-conservation-funding (noting that "funds—generated solely by sportsmen and women—often account for 80% or more of state fish and wildlife agency revenue").  Not only do hunters contribute financially, but some even donate land to expand the Refuge System for the benefit of all.  In 2018 Sam Shine of Indiana donated 6,200 acres of "ecologically critical pine lands and headwaters" adjoining the St. Marks Refuge to expand that refuge.  Dan Chapman, *Indiana Businessman Donates Thousands of Acres to St. Marks NWR*, Tallahassee Democrat (June 2018), https://www.tallahassee.com/story/news/2018/06/12/indiana-business-man-donates-thousands-acres-st-marks-nwr/681162002/ (last visited Feb. 7, 2022). Shine, who grew up hunting, had been leasing this land to the State for hunting, fishing, and other wildlife-dependent recreational uses.  These uses "will be encouraged" on this property once it becomes part of the Refuge.  *Id.*

[5] *See* CCPs for Kirwin and Patoka Refuges, https://www.fws.gov/mountain-prairie/refuges/completedPlanPDFs_F-L/krw_2006_ccpfinal_all.pdf and https://www.fws.gov/midwest/planning/patokariver/finalCCP/CCP.pdf.

invasive exotic wildlife, including on the Laguna Atascosa and Everglades Headwaters Refuges at issue in this suit.[6]

Proposed intervenors are intimately familiar with the Refuge System and the critical role played by sportsmen and women in obtaining and protecting habitat, controlling wildlife populations, and funding responsible state and federal management.

Safari Club is a non-profit organization with approximately 50,000 members and advocates. Many of those members hunt on lands that are part of the Refuge System, including the Refuges at issue in this case. Ex. 3: Goodenow Decl., ¶¶ 3, 8. Safari Club's missions include the conservation of wildlife, protection of the hunter, and education of the public about hunting and its use as a conservation tool. *Id.* ¶ 4. Safari Club has long been an active supporter of the Refuge System and expanding hunting opportunities on Refuges. Safari Club has defended the Refuge System in litigation, including in a decade-long case over the Service's compliance with the National Environmental Policy Act ("NEPA") when opening hunting on Refuge System lands. *Id.* ¶ 7. Safari Club has also routinely submitted comments

---

[6] Service, CCP: Laguna Atascosa Refuge (Sept. 2010),
https://www.fws.gov/doiddata/dwh-ar-documents/1266/DWH-ARZ000415.pdf;
Service, Everglades Headwaters Refuge Land Protection Plan (Jan. 2012),
https://www.fws.gov/uploadedFiles/REgion_4/NWRS/Zone_2
/Everglades_Headwaters_Complex/Everglades_Headwaters/PDFs/FinalLPPEvergl
adesHeadwatersNWR.pdf.

in support of the opening of hunting and fishing opportunities on Refuges. *E.g.*, Dkts. FWS-HQ-NWRS-2021-0027; FWS-HQ-NWRS-2020-0013; FWS-HQ-NWRS-2019-0040.

The NRA is a non-profit organization representing approximately 5 million members and supporters nationwide, including many hunters and anglers who hunt on Refuges. Ex. 13: Savani Decl., ¶ 4. The NRA and its members are dedicated to protecting, promoting, and preserving America's hunting heritage for the common good, and general welfare of the public. *Id.* ¶¶ 5-8. The NRA has intervened in lawsuits challenging hunting opportunities on Refuges in the past. *See, e.g., Ctr. for Biological Diversity v. Zinke*, 313 F. Supp. 3d 976, 980 (D. Alaska 2018). The NRA has members who plan to take advantage of the expanded hunting opportunities in the 2020 Hunt Fish Rule. *E.g.*, Ex. 4: Hedström Decl., ¶¶ 8-10; Ex. 11: Rusing Decl., ¶¶ 9-10.

Sportsmen's Alliance is a national 501(c)(3) organization dedicated to protecting the heritage of America's sportsmen and women. Ex. 6: Heusinkveld Decl., ¶ 3. Sportsmen's Alliance represents both individual and organizational members throughout the country who use the Refuge System. *Id.* at ¶¶ 5-8. The organization has long promoted the expansion of Refuges and corresponding opportunities for sportsmen and women to hunt and fish on those lands. *Id.* at ¶ 6. Sportsmen's Alliance routinely intervenes in litigation to defend the Refuge

System, including prior suits that upheld the opening and expansion of hunting in over sixty Refuges from 1997 to 2005. *See Fund for Animals v. Hall*, 777 F. Supp. 2d 92 (D.D.C. 2011). Sportsmen's Alliance also regularly participates in the rulemaking process and management of Refuges by submitting public comments; it supported the 2020 Hunt Fish Rule in a May 28, 2020 letter. Ex. 6: Heusinkveld Decl., ¶ 7. Finally, members of Sportsmen's Alliance plan to take advantage of the expanded opportunities provided by the 2020 Hunt Fish Rule. Ex. 1: Bancroft Decl. ¶¶ 2, 4; Ex: 7: Maas Decl., ¶¶ 2-3; Ex. 14: Walters Decl., ¶¶ 4-5.

RMEF is a 501(c)(3) non-profit public benefit corporation incorporated in Montana. Ex: 15: Weaver Decl., ¶ 2. RMEF has more than 225,000 members nationwide, who have both recreational and economic interests in hunting and enjoying elk and other wildlife. *Id.* ¶ 3. RMEF's mission is to ensure the future of elk, other wildlife, their habitat and our hunting heritage. *Id.* ¶ 4. RMEF works to enhance and protect wildlife habitat and provides financial support for wildlife research/management activities across the county. *Id.* ¶¶ 5-9. Many of those habitat and research/management projects take place on or near Refuges. *Id.* ¶¶ 5-9. RMEF has directly contributed to wildlife research, restoration, or hunter education on four of the Refuges included in this suit. *Id.* ¶ 8. RMEF supported the 2020 Hunt Fish Rule in a letter dated June 4, 2020. *Id.* ¶ 10. In addition, RMEF members have hunted on three of the Refuges included in this suit, have

taken advantage of the expanded hunting opportunities that the 2020 Hunt Fish Rule provided, and plan to do so again in the future.  Moon Decl.; Sages Decl.; Hernandez Decl.

On November 29, 2021, the Center filed this suit.  It requests that the Court vacate the 2020 Hunt Fish Rule as violating Section 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), and NEPA, 42 U.S.C. §§ 4321 *et seq.  See* Dkt. 1.  Federal Defendants appeared on February 4, 2022.  Dkt. 9.  On the same date, this Court granted the Center's and Federal Defendants' Joint Motion to Stay Proceedings.  Dkt. 10.  The case deadlines are current stayed until April 8, 2022.  Dkt. 11.

## ARGUMENT

## I.   THE HUNTING COALITION SHOULD BE GRANTED INTERVENTION AS OF RIGHT.

The Court should grant the Hunting Coalition's Motion to Intervene.  Under Rule 24(a) of the Federal Rules of Civil Procedure, "the court must permit anyone to intervene" when: (1) the application for intervention is timely; (2) the proposed intervenor has a "significantly protectable interest" in the subject of the action; (3) resolution of the case "may, as a practical matter, impair or impede" the proposed intervenor's ability to protect its interest; and (4) the interest is not adequately represented by existing parties in the lawsuit.  *E.g., Sw. Ctr. for Bio. Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001).  Rule 24(a) must be liberally construed in

8

favor of potential intervenors. *Id.* at 818. In so doing, the Court accepts the non-conclusory allegations made in support of intervention as true. *Id.* at 819. Because this Motion is timely, the Hunting Coalition has a strong interest in protecting hunting and fishing opportunities, this interest will be impaired if the plaintiff succeeds, and Federal Defendants cannot adequately represent the interests of private hunters, this Court should grant the Hunting Coalition intervention as of right.[7]

### A. The Motion is timely.

The first element is satisfied because this Motion was filed at the very earliest stages of this case. Courts routinely find intervention motions are timely when filed within a few months of the plaintiff's complaint and the defendant's answer, before any substantive developments in the case have occurred. *E.g.*, *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (finding motion to intervene as of right timely when filed less than three months after the complaint and less than two weeks after defendant's answer);

---

[7] The Hunting Coalition concurrently filed a motion to dismiss instead of an answer under Fed. R. Civ. P. 24(c). The Ninth Circuit has ruled that Rule 24(c)'s pleading requirement is "'purely technical'" and "ha[s] approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion." *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) (citation omitted); *Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 261, 268 n.1 (D. Ariz. 2020) (holding that the court "must" allow intervention when Rule 24(a)(2) factors are met even though the motion did not include a pleading).

*NRDC v. McCarthy*, No. 16-cv-2184, 2016 WL 6520170, *3 (N.D. Cal. Nov. 3,

2016) (finding motion to intervene timely when filed "only a few months after the

Complaint, before Defendants have filed their answer, and before any substantive

orders have been issued"); *Rock Creek All. v. Service*, No. 08-cv-28, 2008 WL

11350203, *1 (D. Mont. Apr. 4, 2008) (finding motion to intervene timely when

filed before the defendant's answer).[8]

The Motion is timely because it was filed within approximately three months

of when the Complaint was filed, and before Federal Defendants' answer.  The

case is currently stayed until April.  No substantive developments occurred before

the stay: the existing parties have not filed any dispositive motions, the Court has

not made any rulings or even set a briefing schedule, and the initial case

management conference is almost two months away.  The Hunting Coalition's

participation will not prejudice the existing parties.  *See, e.g.*, *United States v.*

*Oregon*, 745 F.2d 550 (9th Cir. 1984).  Accordingly, the Motion is timely.

---

[8] When a proposed intervenor delays in some manner in filing its motion, courts in
the Ninth Circuit may look at three factors when determining timeliness: "(1) the
stage of the proceeding; (2) the prejudice to other parties; and (3) the reason for
and length of the delay." *E.g.*, *Oregon*, 745 F.2d at 55. However, when the case is
in the very early stages, as here, courts do not typically perform this analysis. *E.g.*,
*NRDC*, 2016 WL 6520170 at *3; *Rock Creek All.*, 2008 WL 11350203 at *1.

**B.    The Hunting Coalition has significant protectable interests in the subject matter of this litigation.**

The Hunting Coalition's Motion should be granted because the organizations have significant protectable interests in hunting, fishing, and enjoying wildlife on the newly opened acres, using methods of harvest, harvesting species, and generally taking advantage of the new hunting and fishing opportunities provided by the 2020 Hunt Fish Rule.  The interest element of Rule 24(a) does not present a high bar to intervention: it "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Therefore, the interest test is met where a proposed intervenor "asserts an interest that is protected under some law," and "there is a relationship between its legally protected interest and plaintiff's claim," meaning that "resolution of the plaintiff's claims *will actually affect*" the proposed intervenor.  *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation and citation omitted) (emphasis added).  A proposed intervenor demonstrates the required interest when the plaintiff's requested relief would compel an agency defendant to more restrictively regulate the proposed intervenor's activities.  *See, e.g., Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).

11

Safari Club, the NRA, Sportsmen's Alliance, and RMEF are pro-hunting organizations whose missions include protecting the freedom to hunt and hunting access, including on public lands. Ex. 3: Goodenow Decl., ¶¶ 4-5; Ex. 13: Savani Decl., ¶ 6; Ex. 6: Heusinkveld Decl., ¶ 3; Ex. 15: Weaver Decl., ¶ 4. Each organization has members with concrete interests in preserving the hunting and fishing access provided in the 2020 Hunt Fish Rule, which is authorized by state law. 85 Fed. Reg. 54,076 (Aug. 31, 2020). These members wish to enjoy opportunities to harvest new species of game, or to access Refuge acres that have not previously been hunted. *E.g.*, Ex. 2: Edwards Decl., ¶¶ 7-8 (discussing access to new acreage for hunting on the Lacreek Refuge); Ex. 14: Walters Decl., ¶ 5 (expressing desire to hunt newly opened species on the Everglades Headwaters and St. Marks Refuges); Ex. 4: Hedström Decl., ¶¶ 8-10 (expressing desire to hunt black bear on Swan River Refuge for the first time); Ex. 11: Rusing Decl., ¶¶ 9-10 (expressing desire to take advantage of the newly allowed hunting opportunities on Leslie Canyon Refuge). These members seek to preserve their hunting heritage and introduce their families to hunting on the Refuges at issue. *E.g.*, Ex, 8: Mann Decl., ¶¶ 8-13; Ex. 10: Rabbe Decl., ¶ 8.

These members are particularly interested in the 2020 Hunt Fish Rule because the new hunting and fishing opportunities exist on public lands. Public lands hunting reduces barriers to access (i.e., knowing someone with private land,

"paying to hunt"). *E.g.*, Ex. 2: Edwards Decl. ¶ 10; Mann Decl. ¶ 9; Rabbe Decl. ¶¶ 5, 9. Further, these members are sincerely concerned with the proper management of game species. The opening of species, acreage, seasons, and methods of harvest allows for continued ethical management of game and fish species on federal lands in accordance with state wildlife management objectives. *E.g.*, Ex. 14: Walters Decl. ¶ 7. The interests of the Hunting Coalition and their members in taking advantage of the legal, regulated hunting and fishing opportunities provided in the 2020 Hunt Fish Rule are strongly related to the Center's claims. The Center's requested relief would close down these opportunities on the Refuges at issue, therefore harming these interests and creating a conflict with state law. The Hunting Coalition has demonstrated "significant, protectable interests" in the 2020 Hunt Fish Rule so as to satisfy Rule 24(a), *see City of Los Angeles*, 288 F.3d at 398, and their Motion should therefore be granted.

### C. Disposition of this case will impair the Hunting Coalition's ability to protect their interests.

The Center's requested vacatur of the 2020 Hunt Fish Rule will impair the interests of the Hunting Coalition and their members by closing down the new hunting and fishing access. The impairment requirement is satisfied, "as a general rule," if a proposed intervenor "would be substantially affected in a practical sense by the determination made in an action." *Sw. Ctr. for Bio. Diversity*, 268 F.3d at

822 (internal quotation and citation omitted).  To meet the impairment test, a

proposed intervenor need only demonstrate that the plaintiff's requested relief will

have "direct, immediate, and harmful effect" on its interests.  *Id.* at 818.  This bar

is not high.  Once courts find the proposed intervenor has a significant protectible

interest in the case, they typically have "'little difficulty concluding that the

disposition of the case may, as a practical matter, affect it.'"  *Citizens for Balanced*

*Use*, 647 F.3d at 898 (quoting *California ex rel. Lockyer v. United States,* 450 F.3d

436, 442 (9th Cir. 2006)).

As described in the attached declarations, resolving this case in the

plaintiff's favor would substantially affect hunters by obstructing hunting and

fishing on the Refuge lands opened by the 2020 Hunt Fish Rule.  This would

significantly impair the interests of the Hunting Coalition's members who plan to

use these new opportunities to hunt certain species, to hunt certain acreage, or to

use new methods of harvest.  For example, declarant Mann plans to take advantage

of the newly opened waterfowl hunting and increased acreage for hunting on the

Lacreek Refuge in South Dakota.  Mr. Mann prefers to hunt on public lands, and

his access to the Lacreek Refuge will be significantly reduced if the Service is

forced to close these new opportunities.  Ex. 8: Mann Decl. ¶¶ 10-12.  Likewise,

declarant Walters, a professional alligator hunter, plans to hunt the newly opened

alligator seasons and for feral hogs on Everglades Headwaters Refuge and

potentially on St. Marks Refuge in Florida. Captain Walters strongly supports the use of hunting to manage invasive and destructive species like hogs, and his interest in protecting the habitat through hunting will be impaired if the Center succeeds in restricting access to these Refuges. Ex. 14: Walters Decl. ¶¶ 5-7. Declarant Rusing plans to hunt on Leslie Canyon Refuge, which is close to his home and offers new habitat that has not previously been hunted. Mr. Rusing will lose this opportunity if the 2020 Hunt Fish Rule is vacated. Ex. 11: Rusing Decl., ¶¶ 9-11.

In a practical sense, if the 2020 Hunt Fish Rule is vacated, the Hunting Coalition's members will lose their ability to hunt and fish on these Refuge lands—and will likewise lose their ability to participate in sustainable management of wildlife species. As organizations, Safari Club, the NRA, Sportsmen's Alliance, and RMEF's ability to promote sustainable wildlife management through hunting and fishing on Refuges will be greatly diminished should the Center succeed. In addition, the financial investment in Refuges that organizations in the Hunting Coalition have contributed will also be lost. Ex. 15: Weaver Decl., ¶¶ 7-9. Thus, the Hunting Coalition has satisfied this requirement by showing that their organizational and their members' interests may be impaired by this action.

### D.   Federal Defendants do not adequately represent the Hunting Coalition's interests.

15

A proposed intervenor's "burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022) (citation omitted); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (holding that the burden of showing inadequacy of representation by existing parties is "minimal"). In determining the adequacy of existing representation, the court considers "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Sw. Ctr. for Bio. Diversity*, 268 F.3d at 822 (citation omitted).

Federal Defendants will not "undoubtedly" make all the Hunting Coalition's arguments or be capable or willing to do so. Most immediately, the Hunting Coalition has challenged this Court's jurisdiction due to the Center's lack of standing; Federal Defendants have not articulated these arguments. In fact, Federal Defendants are considering a settlement with the Center (Dkt. 10)—despite the jurisdictional and other weaknesses in the Complaint, which are discussed in the attached motion to dismiss. These settlement discussions raise questions about

Federal Defendants' willingness to vigorously defend the hunting and fishing
opportunities challenged by the Center.

Moreover, the Hunting Coalition has a history of raising procedural,
jurisdictional, and other types of arguments that are not addressed by federal
defendants in similar cases.[9]  This factor weighs heavily in favor of granting
intervention—the Ninth Circuit has recently held that the identification of
arguments not raised by existing parties demonstrated that existing parties did not
adequately represent the proposed intervenor's interests.  *W. Watersheds Project*,
22 F.4th at 841.[10]  Because the Hunting Coalition and Federal Defendants have
differing interests and mandates as well as different litigation strategies, it is
doubtful that Federal Defendants will be capable and willing to make all the same
arguments that the Hunting Coalition will make in this matter should this Court
grant the Motion.

---

[9] *E.g.*, *Pub. Emps. for Envtl. Resp. v. Bernhardt*, No. 18-cv-1547, 2020 WL
601783, *3 (D.D.C. Feb. 7, 2020) (obtaining dismissal of plaintiffs' complaint due
to lack of standing; the federal defendants did not challenge the court's
jurisdiction); *Ctr. for Biological Diversity v. Haaland*, No. 20-cv-461, Dkt. 23 (D.
Ariz. June 16, 2021) (Safari Club motion to dismiss challenging the injury prong of
standing and raising the Act of State doctrine); *Defs. of Wildlife v. Service*, No. 21-
cv-344, Dkt. 39  (N.D. Cal. May 6, 2021) (Safari Club and NRA Motion to
Dismiss for Lack of Jurisdiction).

[10] Further, while Federal Defendants may defend the 2020 Hunt Fish Rule on its
merits based on the reasoning reflected in the administrative record, it is highly
unlikely they will focus on the same hunting access, conservation, and wildlife
management issues that the Hunting Coalition will raise.

The third factor also weighs in favor of intervention, as the Hunting Coalition offers a necessary element that would otherwise be neglected—the perspective of end-user hunters and anglers, who will benefit from the opportunities opened in the 2020 Hunt Fish Rule. *Accord W. Watersheds Project*, 22 F.4th at 842 (reversing denial of motion to intervene and finding existing parties did not adequately represent proposed intervenor's legally protected interests, in part because proposed intervenor "actually participated" in the challenged conduct, unlike the existing parties).  The Hunting Coalition will offer an important differing viewpoint in this litigation.  Nothing ensures that arguments involving hunting (as well as other arguments) will be before the Court unless the Hunting Coalition intervenes.  Federal Defendants do not and cannot present the sole perspective of hunters and anglers, as they are government regulators who must represent a constituency of diverse interests—including those who disagree with hunting and fishing.  Federal Defendants must "represent a broader view than the more narrow, parochial interests of" Safari Club, the NRA, Sportsmen's Alliance, RMEF, and their members.  For this reason, inadequate representation "is most likely to be found." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173; *see also Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (holding that union's interests

were not adequately represented by government defendants because union's interests were narrower and more parochial than those of the public at large, represented by the government). All three factors support the Hunting Coalition's intervention in this case.

Moreover, Federal Defendants will not adequately represent the Hunting Coalition's interests because they have a different "ultimate objective." A presumption of adequacy of representation *may* arise where the proposed intervenor and an existing party share "the same ultimate objective," *Citizens for Balanced Use*, 647 F.3d at 898. Of course, no presumption exists if the parties have differing objectives and "points of view" about the case. *See id.* at 899. The proposed intervenor rebuts any such presumption with a "compelling showing" of inadequacy. *Id.*

The Hunting Coalition's ultimate objective here is both broader and narrower than Federal Defendants'. Like Federal Defendants, the Hunting Coalition aims to defend the 2020 Hunt Fish Rule. But their reasons differ: Safari Club, the NRA, Sportsmen's Alliance, and RMEF each seek to ensure that its members can participate in hunting and fishing on the eight Refuges specifically challenged in the Complaint. As the attached Declarations demonstrate, these opportunities are greatly valued by Coalition members. These "narrow and

19

parochial" interests are more specific than the Service's goal of generally defending the Rule.

Moreover, the Hunting Coalition intends to defend the newly opened hunting and fishing opportunities and, more generally, the opening of hunting and fishing on public lands overall. As part of their missions, the Hunting Coalition organizations are trying to expand hunting and fishing opportunities across federal lands. *E.g.*, Goodenow Decl., ¶ 5. They also work to ensure that hunters may contribute to conservation efforts by keeping wildlife populations in balance according to state wildlife research and quotas. Finally, Safari Club, the NRA, Sportsmen's Alliance, and RMEF each promote and defend hunting as a conservation tool. Goodenow Decl., ¶¶ 4, 6; Savani Decl., ¶ 6; Stevens Decl., ¶ 4. Federal Defendants presumably seek to defend the legality of their rulemaking. But that effort is more limited than defending the overall benefits and expansion of hunting and fishing on federal lands, and Federal Defendants are further limited by their legal obligations under the Improvement Act.

In short, the parties' objectives are not the same, and the Hunting Coalition should not need to overcome any presumption. *See W. Watersheds Project v. Service*, No. 10-cv-229, 2011 WL 2690430, *4 (D. Idaho July 9, 2011) (holding proposed intervenors and Service did not share the same ultimate objective and no presumption arose, even though "[o]n one level, the applicants and the [agency]

share an objective: Both seek to affirm the [challenged] decision," because "[t]he ultimate objective of the applicants is to prevent, or at least delay as long as possible the effects of the listing; the [agency] simply seeks confirmation of its administrative process").

But even if the Court finds that the presumption of adequacy applies, it is rebutted in this case. "The most important factor in determining the adequacy of representation is how the [proposed intervenor's] interest compares with the interests of existing parties." *Citizens for Balanced Use*, 647 F.3d at 898 (internal quotations and citations omitted). A compelling showing of inadequacy is made where existing parties and the proposed intervenors "do not have sufficiently congruent interests." *Sw. Ctr. for Bio. Diversity*, 268 F.3d at 823. Existing parties and proposed intervenors do not have sufficiently congruent interests where their motivations in defending the federal action differ, *see id.*; or where the proposed intervenor's interests "might diverge" from that of existing parties. *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. 06-cv-2845, 2007 WL 3034887, *14 (E.D. Cal. Oct. 16, 2007) (concluding that the proposed intervenor's interests would not be adequately represented by the existing parties due to potential divergence). A proposed intervenor also makes a compelling showing by demonstrating an individual stake in the outcome of the case, which differs from the more general interests of existing parties. *See W. Watersheds Project*, 22 F.4th

at 841 ("Unlike [intervenor trade association] or the State of Wyoming, [proposed intervenor] actually participated in the challenged lease sales and obtained a property interest that is imperiled by this litigation.").

The Hunting Coalition does not have sufficient congruent interests with Federal Defendants. All Federal Defendants need to do is defend their rule. They have no interest in defending hunting or fishing, in principle, or specific hunting and fishing opportunities that members wish to utilize. Even though responsible for the openings, the Service does not have a real dog in the fight: as explained in the 2020 Hunt Fish Rule, many of the newly opened opportunities are requested and championed by state wildlife agencies. *E.g.*, 85 Fed. Reg. 20,030 (Apr. 9, 2020). For this reason, it is always possible that the Service will back away from a proposed opening—as they did with the proposed opening of deer hunting (to control overly abundant deer populations) on the Sachuest Point Refuge in Rhode Island. 85 Fed. Reg. 54,076 (Aug. 31, 2020). Because Federal Defendants' and the Hunting Coalition's interests "may" diverge, any presumption of adequacy is rebutted.

In addition, the Hunting Coalition's members have demonstrated an individual stake in the outcome of this case. Unlike the Service—the agency charged with regulating Refuges, the Hunting Coalition's members "actually participate[ ]" in hunting on the lands at issue in this case. *E.g.*, Mann Decl., ¶¶ 8-

9. And those members' interests are threatened by the Center's potential success in closing down their hunting and fishing opportunities.[11]

For these reasons, a presumption of adequate representation does not apply, or is rebutted by the Hunting Coalition's contrasting interests compared to existing parties. The three factors the Court considers also weigh in favor of finding that Federal Defendants do not adequately represent the Hunting Coalition's interests. Accordingly, the Hunting Coalition has demonstrated that they meet all four elements for intervention as of right under Rule 24(a), and the Court should grant their Motion to Intervene.

## II.   ALTERNATIVELY, THE HUNTING COALITION SHOULD BE GRANTED PERMISSIVE INTERVENTION.

In the alternative, the Hunting Coalition respectfully requests leave to intervene under Federal Rule of Civil Procedure 24(b). Courts allow permissive intervention where the proposed intervenor timely moves to intervene and raises a claim or defense that shares common questions of law or fact with the main case. *E.g.*, *Helena Hunters & Anglers Ass'n v. Martin*, No. 19-cv-47, 2019 WL

---

[11] The Ninth Circuit recently reversed a district court's denial of a motion to intervene based on inadequacy of representation. The Ninth Circuit held that "practical considerations" weighed in favor of granting intervention because the proposed intervenor held leasehold interests that were threatened by the plaintiff's suit. *Mont. Wildlife Fed'n v. Haaland*, No. 20-35793, 2022 WL 42794, *2 (9th Cir. Jan. 5, 2022) (not precedential). Here, practical considerations weigh in favor of intervention because the Hunting Coalition's members advantage of the hunting and fishing opportunities that are threatened due to this suit.

4043948, *1 (D. Mont. Aug. 27, 2019) (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)).  Permissive intervention is proper when the proposed intervenor's participation will "assist the court in its orderly procedures leading to the resolution of this case, which [will] impact[ ] large and varied interests." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173. Courts have also permitted intervention where equitable considerations weigh in its favor. *E.g.*, *California v. U.S. EPA*, No. 18-cv-3237, 2018 WL 6069943, *4 (N.D. Cal. Nov. 20, 2018) (granting intervention where party's participation "will likely contribute 'to the just and equitable adjudication of the legal questions presented'") (quoting *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011)); *All. for the Wild Rockies v. Kimbell*, No. 06-cv-63, 2006 WL 8430428, *1 (D. Mont. Aug. 7, 2006) (granting permissive intervention to a party "whose interests are substantially affected" by the outcome of the case).

The Hunting Coalition should be granted permission to intervene because their defense shares common questions of law and fact with the Complaint. Intervenors satisfy the commonality standard by "assert[ing] defenses of the [challenged party action] directly responsive to the claims for injunction asserted by plaintiffs." *Kootenai Tribe of Idaho*, 313 F.3d at 1110.  If the Court does not dismiss the Complaint for lack of jurisdiction, the Hunting Coalition has

challenged Plaintiff's ability to require optional programmatic consultation under Section 7 of the ESA. The Hunting Coalition will also explain why injunctive relief is inappropriate, given the Refuge-specific consultations and NEPA analysis evident in the Administrative Record. By defending the 2020 Hunt Fish Rule both due to lack of jurisdiction and on the merits, the Hunting Coalition's defenses, including their proposed motion to dismiss, directly respond to injunctive claims stated in the Complaint.

The other component of Rule 24(b) is met because the Motion is timely. *See* pp. 9-10 above. This intervention will not unduly delay or prejudice the parties given the early stages of this case and the absence of any substantive decisions or briefing. *E.g.*, *Crow Indian Tribe v. United States*, No. 17-cv-89, 2017 WL 6327775, *2 (D. Mont. Dec. 11, 2017). And as in all other cases in which they participate, the Hunting Coalition will abide by any briefing schedules established by this Court.

In addition, equitable considerations weigh in favor of permissive intervention. The Hunting Coalition's members will be substantially harmed if the Center succeeds in closing down the new hunting and fishing opportunities. The Hunting Coalition has extensive experience with ESA and NEPA litigation and defending the unique interests and perspectives of hunting as a wildlife management tool and heritage pastime. For these reasons, their participation will

25

contribute to the just and equitable adjudication of this case. *California v. U.S. EPA*, 2018 WL 6069943 at \*4; *All. for the Wild Rockies*, 2006 WL 8430428 at \*1.[12] Accordingly, the Court should grant permissive intervention if it denies intervention as of right.

## III.   AS A FINAL ALTERNATIVE, THE HUNTING COALITION SHOULD BE GRANTED AMICI CURIAE STATUS.

As a final alternative, the Hunting Coalition respectfully requests that the Court grant them amici curiae status and the ability to submit amici arguments at each stage of the case. The Court has "broad discretion" to grant a motion to participate as amicus. *Oakley v. Devos*, No. 20-cv-3215, 2020 WL 3268661, \*13 (N.D. Cal. June 17, 2020). The Court should use that discretion to allow the Hunting Coalition to participate as an amicus if it denies their Motion to intervene. That participation is especially appropriate here because this is a case of "general public interest." *Miller-Wohl Co. v. Comm'r of Labor & Indus.*, 694 F.2d 203, 204 (9th Cir. 1982). It is also appropriate to allow the Hunting Coalition to participate

---

[12] By contrast, it would be inequitable for this case to proceed without including any party to represent the interests of hunter conservationists. As the district court noted in granting Safari Club's motion to intervene in *Public Employees for Environmental Responsibility*, if the plaintiffs prevail, relisting of the species "will serve as a complete bar on Safari Club's pursuit of its preferred conservation approach." No. 18-cv-1547, Dkt. 22 (Mar. 22, 2019). Given the stakes for the Hunting Coalition's members, the commonality of their defenses, and the timeliness of this Motion, permissive intervention is proper if the Court denies intervention as of right.

as amici to represent the interests of hunter and angler conservationists who participate in hunting and fishing activities on the challenged Refuges, and whose interests are not represented by government defendants responsible for representing a broad range of constituencies.

## CONCLUSION

For the reasons stated above, the Hunting Coalition respectfully requests that the Court grant their Motion or, as a final alternative, grant them amici curiae status in this case.

Dated this 7th day of March, 2022.

By:   /s/ Hannah Stone
             Hannah Stone

MILODRAGOVICH, DALE &
STEINBRENNER, P.C.
*Attorneys for Proposed  Defendant-*
*Intervenors Safari Club International,*
*National Rifle Association,*
*Sportsmen's Alliance Foundation and*
*Rocky Mountain Elk Foundation*

Regina Lennox, D.C. Bar No. 1671299*
Safari Club International
501 2nd Street NE
Washington, D.C. 20002
(202) 543-8733 – Phone
(202) 403-2244 – Fax
rlennox@safariclub.org

*Attorney for Proposed Defendant-Intervenor Safari Club International*

Michael T. Jean, MI Bar No. p76010*
Haden W. Hatch, UT Bar No. 1
National Rifle Association of America –
Institute for Legislative Action
11250 Waples Mill Road
Fairfax, VA 22030
703-267-1158 – Phone
mjean@nrahq.org

*Attorney for Proposed Defendant-Intervenor the National Rifle Association of America*

James H. Lister, D.C. Bar 447878*
Brian V. Gerd, AK Bar 1810097*
Birch Horton Bittner & Cherot, P.C.
1100 Connecticut Avenue, NW, Ste. 825
Washington, D.C. 20036-4165
(202) 862-8368 – Direct
(202) 659-5800 – Phone
(202) 659-1027 – Fax
jlister@bhb.com
bgerd@bhb.com

*Attorneys for Proposed Defendant-Intervenors Sportsmen's Alliance Foundation and the Rocky Mountain Elk Foundation*

* Pro hac vice applications pending

28

## CERTIFICATE OF COMPLIANCE

The undersigned does hereby certify that pursuant to Local Rule 7.1(d)(2), the foregoing document:

Does not exceed 6,500 words (briefs in support of motion and response briefs) or 3250 words (reply briefs).

This Brief contains 6,129 words.

By:   /s/ Hannah Stone
          Hannah Stone

MILODRAGOVICH, DALE &
STEINBRENNER, P.C.
*Attorneys for Proposed Defendant-
Intervenors Safari Club International,
National Rifle Association of America,
Sportsmen's Alliance Foundation and
Rocky Mountain Elk Foundation*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon the following by the means designated below this 7th day of March, 2022:

[ ] CM/ECF
[X ] U.S. Mail
[ ] Fed Ex
[ ] Hand-Delivery
[ ] Facsimile
[x ] Email
ccossio@biologicaldiversity.org

Camila Cossio
Center for Biological Diversity
P.O. Box 11374
Portland, OR  97211
*Attorney for Plaintiff*

[ ] CM/ECF
[X] U.S. Mail
[ ] Fed Ex
[ ] Hand-Delivery
[ ] Facsimile
[x ] Email
cadkins@biologicaldiversity.org

Collette L. Adkins
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN  55014-0595
*Attorney for Plaintiff*

[ ] CM/ECF
[X] U.S. Mail
[ ] Fed Ex
[ ] Hand-Delivery
[ ] Facsimile
[x] Email
kakland@biologicaldiversity.org

Kristine Marie Akland
AKLAND LAW FIRM  PLLC
317 E Spruce Street
P.O. Box 7274
Missoula, MT  59807
*Attorney for Plaintiff*

[ ] CM/ECF
[X] U.S. Mail
[ ] Fed Ex
[ ] Hand-Delivery
[ ] Facsimile
[x ] Email
Kaitlyn.poirier@usdoj.gov

Kaitlyn A. Poirer
U.S. Department of Justice –
E.N.R.D. GENERAL LITIGATION
601 D Street NW
Washington, DC  20044
*Attorney for Defendants*
*U.S. Fish & Wildlife Service,*
*Martha Williams, Department of the*
*Interior*

[ ] CM/ECF
[ ] U.S. Mail
[ ] Fed Ex
[ ] Hand-Delivery
[ ] Facsimile
[X ] Email
rlennox@safariclub.org

Regina Lennox
Safari Club International
501 2nd Street, NE
Washington DC 20002
*Attorney for Proposed Defendant-
Intervenor Safari Club International*

[ ] CM/ECF
[ ] U.S. Mail
[ ] Fed Ex
[ ] Hand-Delivery
[ ] Facsimile
[X ] Email   mjean@nrahq.org
             HHatch@nrahq.org

Michael T. Jean
Hadan W. Hatch
National Rifle Association of America
11250 Maples Mill Road
Fairfax VA  22030
*Attorney for Proposed Defendant-
Intervenor National Rifle Association of
America*

[ ] CM/ECF
[ ] U.S. Mail
[ ] Fed Ex
[ ] Hand-Delivery
[ ] Facsimile
[X] Email   jlister@bhb.com

James H. Lister
Brian V. Gerd
Birch, Horton, Bittner & Cherot, P.C.
1100 Connecticut Avenue NW, Suite
825
Washington DC 20036-4165
*Attorneys for Proposed Defendant-
Intervenors
Sportsmen's Alliance Foundation and
Rocky Mountain Elk Foundation*

/s/ Hannah Stone_____
    Hannah Stone

31