TODD KIM, Assistant Attorney General
SETH M. BARSKY, Deputy Assistant Attorney General
S. JAY GOVINDAN, Section Chief
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
(202) 307-6623 (tel)
(202) 305-0275 (fax)
kaitlyn.poirier@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

CENTER FOR BIOLOGICAL DIVERSITY,

Plaintiff,

v.

U.S. FISH AND WILDLIFE SERVICE; MARTHA WILLIAMS, in her official capacity as Director of the U.S. Fish and Wildlife Service; U.S. DEPARTMENT OF THE INTERIOR; and DEBRA HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior,

Defendants.

Case No: 9:21-cv-00144-DWM

STIPULATED SETTLEMENT AGREEMENT

This Stipulated Settlement Agreement ("Agreement") is entered into by and between Plaintiff Center for Biological Diversity and Defendants the U.S. Fish and Wildlife Service ("Service"); Martha Williams, in her official capacity as Director of the Service; the U.S. Department of the Interior; and Debra Haaland, in her official capacity as Secretary of the U.S. Department of the Interior (collectively, "the parties"). In support of this Agreement, the parties state as follows:

WHEREAS, the National Wildlife Refuge System Administration Act, as amended by the National Wildlife Refuge System Improvement Act, states that the Secretary of the Interior, through the Service, is responsible for administering the National Wildlife Refuge System. 16 U.S.C. § 668dd(a)(1). The Service can "permit the use of any area within the System for any purpose, including but not limited to hunting, fishing, public recreation and accommodations, and access whenever [it] determines that such uses are compatible with the major purposes for which such areas were established." *Id.* § 668dd(d)(1). The Service can also issue regulations to administer the Act. *Id.* § 668dd(b)(5).

WHEREAS, the Service has issued regulations stating whether certain wildlife refuges are open to the public for hunting and sport fishing, and if so, any rules that the public must comply with when hunting and sport fishing on the refuges. The Service issues rules annually stating any changes it is making to these regulations for the upcoming hunting and sport fishing seasons. Notwithstanding

these regulations, the Service retains the discretion to close or curtail certain uses, including hunting and sport fishing, on some or all portions of a refuge to protect the refuge's resources, including Endangered Species Act ("ESA") listed species. 50 C.F.R. § 25.21(e).

WHEREAS, on August 31, 2020, the Service issued a final rule specifying the modifications it made for the 2020-2021 hunting and sport fishing season ("2020 Rule"). 85 Fed. Reg. 54,076 (Aug. 31, 2020).

WHEREAS, Plaintiff filed a complaint in November 2021, alleging that the Service had violated the ESA by failing to adequately consider the impacts of hunting and/or sport fishing on certain ESA-listed species that can be found in, or near, the Swan River, Leslie Canyon, Laguna Atascosa, Everglades Headwaters, Kirwin, Patoka, and Lacreek National Wildlife Refuges. ECF 1. Plaintiff also alleged that the Service arbitrarily determined that the 2020 Rule would either have no effect, or would not likely adversely affect, certain ESA-listed species on or near these refuges. *Id.* In addition, Plaintiff alleged that the Service did not conduct an ESA consultation for the St. Marks National Wildlife Refuge, should have conducted a programmatic ESA consultation on the effects of the 2020 Rule on the entire National Wildlife Refuge System, and did not take a "hard look" at the impacts of lead usage on the refuges identified in the complaint in violation of the National Environmental Policy Act ("NEPA"). *Id.*

WHEREAS, the Service issued a final rule on September 16, 2022, specifying the modifications it made to the regulations for the 2022-2023 hunting and sport fishing season. 87 Fed. Reg. 57,108 (Sept. 16, 2022).

WHEREAS, among other things, the final rule: (1) requires the public to use non-lead ammunition and fishing tackle at Patoka National Wildlife Refuge as of September 1, 2026; (2) states that, as part of the 2023-2024 annual rule, the Service will propose requiring the public to use non-lead ammunition and fishing tackle at Blackwater, Chincoteague, Eastern Neck, Erie, Great Thicket, Patuxent Research Refuge, Rachel Carson, and Wallops Island National Wildlife Refuges; and (3) confirms that hunting bears with dogs is prohibited at national wildlife refuges in Montana, including at the Swan River National Wildlife Refuge. *Id.*

WHEREAS, Swan River National Wildlife Refuge has updated its website and brochure to recommend that visitors carry bear spray while on the Refuge. The Refuge will also install a sign recommending that visitors carry bear spray.

WHEREAS, Everglades Headwaters National Wildlife Refuge has updated its website to provide more information about the ESA-listed wood stork, the species' conservation status, and what the public can do to help wood storks on the Refuge.

WHEREAS, in the best professional judgment of the Refuge Manager, the Service may use its authority under 50 C.F.R. § 25.21(e) to close or curtail certain

uses in the immediate area surrounding a nesting colony if there are documented ESA-listed wood stork nesting areas found on the Everglades Headwaters National Wildlife Refuge.

WHEREAS, in the best professional judgment of the Refuge Manager, the Service may use its authority under 50 C.F.R. § 25.21(e) to close or curtail certain uses on some or all portions of the Lacreek National Wildlife Refuge in the event that the Service observes an ESA-listed whooping crane or receives a credible report of a whooping crane on the Refuge.

WHEREAS, on June 8, 2022, Plaintiff submitted a petition for rulemaking to the Service entitled "Petition to Phase Out Lead Ammunition and Fishing Tackle on National Wildlife Refuges."

WHEREAS, on September 23, 2022, the United States Departments of the Interior and Agriculture announced the members of the Hunting and Wildlife Conservation Council, a Federal Advisory Council chartered in February 2022 and managed by the Service.

WHEREAS, the parties, through their authorized representatives, and without any admission or final adjudication of the issues of fact or law with respect to Plaintiff's substantive claims, have reached a settlement that they consider to be in the public interest and just, fair, adequate, and equitable.

WHEREAS, the parties believe it is in the interest of judicial economy and the parties' best interests to avoid litigation of the substantive issues;

THEREFORE, the parties hereby stipulate and agree as follows:

1. The Service will comply with ESA Section 7(a)(2) and the applicable implementing regulations, as appropriate, prior to authorizing new lead use for hunting and sport fishing on any National Wildlife Refuge.

2. The Service will respond to Plaintiff's June 8, 2022 rulemaking petition requesting a phase-out of lead usage on the entire National Wildlife Refuge System by June 1, 2023.

3. This Agreement does not require the Service to conduct a programmatic ESA Section 7(a)(2) consultation on the effects of the 2020 Rule on the entire National Wildlife Refuge System.

4. This Agreement requires the Service to take the actions described in Paragraphs 1 and 2. The Agreement shall not (and shall not be construed to) limit or modify the discretion accorded to the Service by the ESA, NEPA, the Administrative Procedure Act ("APA"), or general principles of administrative law with respect to the procedures to be followed in making any determination required herein, or as to the substance of any determination. No provision of this Agreement shall be interpreted as, or constitute, a commitment or requirement that Defendants take any

action in contravention of the ESA, NEPA, APA, or any other law or regulation, either substantive or procedural.

5. To challenge any action the Service takes pursuant to this Agreement, Plaintiff will be required to file a separate action and otherwise comply with applicable legal requirements.

6. The order entering this Agreement may be modified by the Court upon good cause shown consistent with the Federal Rules of Civil Procedure, by written stipulation between the parties filed with and approved by the Court, or upon written motion filed by one of the parties and granted by the Court. In the event that either party seeks to modify the terms of this Agreement, including the deadline specified in Paragraph 2, or in the event of a dispute arising out of or relating to this Agreement, or in the event that either party believes that the other party has failed to comply with any term or condition of this Agreement, the party seeking the modification, raising the dispute, or seeking enforcement shall provide the other party with written notice of the claim. The parties agree that they will meet and confer (either telephonically or in-person) at the earliest possible time in a good-faith effort to resolve the claim before seeking relief from the Court. If the parties are unable to resolve the claim themselves, either party may seek relief from the Court.

7. In the event that Defendants fail to comply with this Agreement, Defendants have not sought to modify the Agreement, and the parties cannot resolve the claim pursuant to the meet and confer provisions of Paragraph 6, Plaintiff's first remedy shall be a motion to enforce the terms of this Agreement. This Agreement shall not, in the first instance, be enforceable through a proceeding for contempt of court. No party shall institute a proceeding for contempt of court unless Defendants are in violation of a separate order of the Court resolving a motion to enforce the terms of the Agreement.

8. No party shall use this Agreement or its terms as evidence of what does or does not constitute a reasonable timeline for complying with ESA Section 7(a)(2) or responding to a rulemaking petition. No part of this Agreement shall have precedential value in any pending or future litigation or administrative action or in representations before any court or forum or in any public setting.

9. Nothing in this Agreement shall be construed or offered in evidence in any proceeding as an admission or concession of wrongdoing, liability, or any issue of fact or law concerning the claims settled under this Agreement. The Parties do not waive any claim or defense they may have concerning the claims settled under this Agreement or any similar claims brought in the future by any other party. This Agreement is executed solely for the purpose of compromising and settling

Plaintiff's complaint, and nothing herein shall be construed as precedent in any other context.

10. Nothing in this Agreement shall be interpreted as, or shall constitute, a requirement that Defendants are obligated to pay any funds exceeding those available or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other law or regulation.

11. Plaintiff reserves its right to request reasonable fees from Defendants and Defendants reserve their right to contest Plaintiff's entitlement to recover fees in this case and the amount of any such fees, and do not waive any objection or defenses they may have to Plaintiff's fee request. If the parties are unable to settle Plaintiff's fee claim, Plaintiff will have 60 days from the Court's approval of this Agreement to file a motion for fees.

12. The parties agree that this Agreement was negotiated in good faith and that it constitutes a settlement of claims that were denied and disputed by the parties. The Agreement contains all of the agreement between the parties as to Plaintiff's substantive claims and is intended to be the final and sole agreement between the parties. The parties agree that any prior or contemporaneous representations or understandings not explicitly contained in this written Agreement, whether written or oral, are of no further legal or equitable force or effect.

13 The terms of this Agreement shall become effective upon entry of an order by the Court approving the Agreement.

14. Upon approval of this Agreement by the Court, Plaintiff's complaint shall be dismissed with prejudice. Notwithstanding the dismissal of this action, the parties stipulate and respectfully request that the Court retain jurisdiction to oversee any dispute as to fees and compliance with the terms of this Agreement and to resolve any motions to modify such terms, until Defendants satisfy their obligations under the Agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am*, 511 U.S. 375 (1994).

15. The undersigned representatives of each party certify that they are fully authorized by the party they represent to agree to the Court's entry of the terms and conditions of this Agreement and that they agree to the terms herein.

Dated: November 23, 2022

Respectfully submitted,

TODD KIM, Assistant Attorney General
SETH M. BARSKY, Deputy Assistant Attorney General
S. JAY GOVINDAN, Section Chief

*/s/ Kaitlyn Poirier*
KAITLYN POIRIER, Trial Attorney (TN Bar # 034394)
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section

Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
(202) 307-6623 (tel)
(202) 305-0275 (fax)
kaitlyn.poirier@usdoj.gov

Attorneys for Defendants

*<u>/s/ Collette L. Adkins</u>*
Collette L. Adkins
MN Bar No. 035059X
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN 55014-0595
Tel: (651) 955-3821
cadkins@biologicaldiversity.org

*<u>/s/ Camila Cossío</u>*
Camila Cossío
OR Bar No. 191504
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Tel: (971) 717-6727
ccossio@biologicaldiversity.org

Attorneys for Plaintiff